UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
_____

In re:
    MICHAEL J. CANAPE,                              Case No. 20-10303
                                                    Chapter 7
                           Debtor.
_____

APPEARANCES:

John David Wright, Esq
Bartlett, Pontiff, Stewart & Rhodes, PC.
*Attorneys for the Creditor*
PO Box 2168
1 Washington Street
Glens Falls, New York 12801

Christian H. Dribusch, Esq.
The Dribusch Law Firm
*Attorney for the Debtor*
1001 Glaz Street
East Greenbush, New York 12061

Robert E. Littlefield, Jr., United States Bankruptcy Judge

**MEMORANDUM, DECISION-ORDER**

        The current matter before the Court is a motion by Daniel Samp, Samp Insurance Agency, Inc. and Purpose Insurance Agency, Inc. ("Samp" or "Creditor") for an order extending the deadline to object to Michael J. Canape's ("Canape" or "Debtor") discharge pursuant to Federal Rules of Bankruptcy Procedure (collectively "FRBP" or individually "Rule") 4004(a)[1]

---

[1] Rule 4004(a) is titled "Time for Objecting to Discharge: Notice of Time Fixed." This subsection sets the standard objection date for each chapter. Other than a brief reference in the notice of motion, the Creditor does not address this section.

1

and/or 4004(b).[2] This Court has jurisdiction pursuant to 28 U.S.C. §§ 157(a), (b)(1), (b)(2)(J) and 1334(b).[3]

## BACKGROUND

The Debtor purchased an insurance agency from Samp, who partially financed the deal. The Debtor defaulted on payments and the Creditor was awarded a judgment. After Canape filed a Chapter 7 petition, Samp attempted to pursue a remedy in this Court by focusing on an objection to the Debtor's discharge. The deadline to file the objection was June 1, 2020. The Creditor filed a motion to extend his time to object before the deadline expired. Despite there being no opposition, the Creditor never filed an order allowing the extension. Thus, the original bar date was never enlarged. On February 25, 2021, Samp commenced an adversary proceeding ("AP")[4] objecting to the Debtor's discharge. The Debtor moved to dismiss the AP based on its untimeliness. Samp filed the current motion to enlarge ("Motion to Extend") on March 17, 2021, apparently endeavoring to blunt the Debtor's lateness theory.

---

[2] Rule 4004(b) states:

> (b) EXTENSION OF TIME.
>
> (1) On motion of any party in interest, after notice and hearing, the court may for cause extend the time to object to discharge. Except as provided in subdivision (b)(2), the motion shall be filed before the time has expired.
>
> (2) A motion to extend the time to object to discharge may be filed after the time for objection has expired and before discharge is granted if (A) the objection is based on facts that, if learned after the discharge, would provide a basis for revocation under § 727(d) of the Code, and (B) the movant did not have knowledge of those facts in time to permit an objection. The motion shall be filed promptly after the movant discovers the facts on which the objection is based.

[3] Unless otherwise indicated, all chapter and section references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (2022) (the "Bankruptcy Code").

[4] All citations to the AP will be referenced as "Adv. Pro. No." and citations to the main case will be referenced as "ECF No."

The Court bifurcated the Rule 4004(b)(1) and (b)(2) questions and issued a decision ("Samp 1") dismissing the AP solely on an analysis of the (b)(1) arguments, leaving to another day the (b)(2) question. Familiarity with Samp 1 is presumed. This Court now takes up Samp's request to extend time to file under Rule 4004(b)(2).

## FACTS

1. On February 25, 2020, Canape filed a Chapter 7 petition. (ECF No. 1).

2. In his bankruptcy filing, Canape listed the debt owed to Samp.[5] *Id.*

3. The last day to object to the Debtor's discharge was June 1, 2020. *Id.*

4. In response to question four (4) of the petition, the Debtor listed Alpha Insurance, LLC as the only business name used by him in the last eight (8) years. *Id.*

5. In response to question ten (10) of the petition, Canape stated there was no bankruptcy case pending by his spouse. *Id.*

6. The Debtor's spouse filed a bankruptcy proceeding on January 31, 2020, which was designated case number 20-10152.[6]

7. In response to question nineteen (19) contained in "Schedule A/B: Property," the Debtor stated he had an ownership interest in Alpha Insurance, LLC and Canape Enterprises, LLC. *Id.*

8. In "Schedule I: Your Income," the Debtor represented he was not employed and did not list any income for himself. *Id.*

---

[5] Part 3 of Schedule E/F, question five (5) states, "List Others to be Notified About a Debt That You Already Listed." The Debtor indicated Samp Insurance Agency, Inc. and Purpose Insurance Agency, Inc. as entities that should be notified of the filing.

[6] The Court takes judicial notice of this docket.

9. In "Schedule J: Your Expenses," Canape indicated one of his expenses was a mortgage payment of $1,737.00 per month. *Id*.

10. Question twenty-seven (27) of the "Statement of Financial Affairs for Individuals Filing for Bankruptcy" asks, "[w]ithin 4 years before you filed for bankruptcy, did you own a business or have any of the following connections[7] to any business?" The Debtor listed Alpha Insurance, LLC. *Id*.

11. On November 20, 2020, the Trustee commenced a Rule 2004 examination ("2004 exam") of the Debtor, which was continued and concluded on January 8, 2021.[8] (ECF No. 94, Hrg. at 00:49).

12. On February 9, 2021, a 2004 exam of the Debtor's tax preparer was held and completed. (ECF No. 103).

13. Neither the United States Trustee ("UST") nor the Trustee objected to the Debtor's discharge.

14. On February 25, 2021, Samp commenced the AP objecting to Canape's discharge. (Adv. Pro. No. 1).

15. On March 9, 2021, the Debtor filed a Motion to Dismiss the AP. (Adv. Pro. No. 3).

16. On March 17, 2021, Samp filed the Motion to Extend. (ECF No. 110).

17. On April 14, 2021, the Creditor filed a "Memorandum of Law in Further Support of the [Motion to Extend]." (ECF No. 114).

---

[7] Question 27 narrows the business connections to:
　　A sole proprietor or self-employed in a trade, profession, or other activity, either full-time or part-time
　　A member of a limited liability company (LLC) or limited liability partnership (LLP)
　　A partner in a partnership
　　An officer, director, or managing executive of a corporation
　　An owner of at least 5% of the voting or equity securities of a corporation.

[8] During the Debtor's 2004 exam, there was an equipment issue and the examination was adjourned.

18. On May 5, 2021, the Debtor filed an objection. (ECF No. 115).

19. On May 12, 2021, the Court heard argument on the Motion to Extend and the matter was fully before the Court.

20. In Samp 1, this Court dismissed the AP based upon an analysis of 4004(b)(1). (Adv. Pro. No. 12).

21. The Samp 1 decision specifically carves out the Creditor's request for an extension predicated on Rule 4004(b)(2), which is the subject of the current matter. *Id*.

## ARGUMENTS

Samp argues he has provided sufficient evidence of the Debtor's untruthfulness in this proceeding to meet the requirements of Rule 4004(b)(2). The Creditor asserts he was not aware of the numerous discrepancies in the petition, the schedules and the statement of financial affairs or the issues with the tax returns until after Canape and his tax preparer testified at their respective 2004 exams.  This testimony was taken under oath and occurred after the deadline to object to discharge had expired. Finally, Samp contends he filed the Motion to Extend promptly after discovering these facts.

Canape counters that Samp had more than sufficient time to review all the documentation in this matter.  The Debtor emphasizes he has been cooperative and transparent throughout this proceeding and has responded to all requests made by the Trustee. Canape contends, based upon the ample time to review the documents and his own cooperation in this proceeding, Samp cannot meet Rule 4004(b)(2)'s test to extend time.  Finally, Canape indicates both the Trustee and the UST reviewed the documentation and did not oppose the Debtor's discharge.  Since the UST and the Trustee are the "gate keepers" in this proceeding and they did not object to his discharge, the Debtor posits there is no basis for the Creditor's objection.

**DISCUSSION**

Obtaining a discharge is the primary purpose in filing for bankruptcy protection. "One of the fundamental principles of bankruptcy law is that a discharge enables the 'honest but unfortunate debtor' to receive a fresh start." *In re Goldin*, 587 B.R. 414, 425 (Bankr. E.D.N.Y. 2018) (quoting *Marrama v. Citizens Bank*, 549 U.S. 365, 367 (2007)); *see also In re Ajasa*, 627 B.R. 6, 31 (E.D.N.Y. 2021) ("One of the fundamental principles of bankruptcy law is that a bankruptcy discharge enables a debtor to receive a 'fresh start.'") (citation omitted). The discharge is so integral to the "fresh start," bankruptcy courts are directed[9] to issue it if the debtor meets all the requirements of § 727(a). It is also axiomatic, "revocation of discharge is an 'extreme penalty,' and [section 727(d)] should be 'construed strictly against those who object to the debtor's discharge and liberally in favor of a bankrupt.'" *In re Bressler*, 601 B.R. 318, 331 (Bankr. S.D.N.Y. 2019) (citation omitted). However, it is equally settled that "[c]omplete disclosure is in every case a condition precedent to the granting of a discharge." *Ochs v. Nemes (In re Nemes)*, 323 B.R. 316, 324 (Bankr. E.D.N.Y. 2005) (quoting *In re Underhill*, 82 F.2d 258, 259-60 (2d. Cir. 1936)).

Rule 4004(b)(2) governs the current matter and provides the following three (3) part test to enlarge the time to object to discharge after the original deadline expires but before the discharge issues:

(1) the objection is based on facts that, if learned after the discharge, would provide a basis for revocation under § 727(d) of the Code[;]

(2) the movant did not have knowledge of those facts in time to permit an objection[; and]

(3) [t]he motion [is] filed promptly after the movant discovers the facts on which the objection is based.

---

[9] § 727(a) begins, "The Court shall grant the debtor a discharge; unless . . . ."

Fed. R. Bankr. P. 4004(b)(2).

### 1. Do The Facts Establish a Basis for Revocation Under § 727(d)(1)?[10]

The first question for consideration is whether Samp has provided the Court with a basis for revocation under § 727(d)(1). Fed. R. Bankr. P. 4004(b)(2). It has been explained:

> To prevail under Section 727(d)(1), the Plaintiff must establish by a preponderance of the evidence that: (1) the debtor obtained the discharge through fraud; (2) the creditor possessed no knowledge of the debtor's fraud prior to the granting of the discharge; and (3) the fraud, if known, would have resulted in the denial of the discharge under section 727(a) of the Bankruptcy Code.

*Soler v. Multinational Life Ins. Co. (In re Soler)*, No. 14-10211, 2021 Bankr. LEXIS 3171, at *12 (Bankr. P.R. Nov. 17, 2021) (citation omitted).

§ 727(d)(1)'s "phrase 'discharge was obtained through the fraud of the debtor' has been construed to refer to the behavior that would be sufficient for the denial of discharge under §727(a)(2)-(5)." *Gebhardt v. Smith (In re Smith),* No. 15-01010, 2017 Bankr. LEXIS 905, at *17 (Bankr. S.D. Ga. Mar. 31, 2017). "When a §727(d)(1) claim is based on §727(a)(4)(A),[11] the elements partially merge, and a plaintiff states a claim under §727(d)(1) if she states a claim under §727(a)(4)(A) and alleges no knowledge of the fraud before the discharge." *In re Smith*, 489 B.R. 875, 891 (Bankr. M.D. Ga. 2013); *see also Ravasia v. United States Tr. (In re Ravasia),* No. 20-1212, 2021 Bankr. LEXIS 1033, at *14-15 (B.A.P. 9th Cir. Apr. 16, 2021) ("Thus,

---

[10] § 727(d) has several subsections. The only one factually applicable here is (d)(1), which states:

> On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if ---(1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge[.]

[11] § 727(a)(4)(A) states, in pertinent part,"(a) The court shall grant the debtor a discharge, unless—
(4) the debtor knowingly and fraudulently, in or in connection with the case—(A) made a false oath or account."

To prevail on a § 727(a)(4)(A) cause of action a plaintiff must establish that "(1) the debtor made a statement under oath, (2) such statement was false, (3) the debtor knew the statement was false, (4) the statement was made with fraudulent intent, and (5) the statement related materially to the bankruptcy case." *Darwin (Huck) Spaulding Living Tr. v. Carl (In re Carl)*, 517 B.R. 53, 69 (Bankr. N.D.N.Y. 2014) (citation omitted).

under Rule 4004(b)(2) . . . the [movant] had to show the amended complaint alleged that the [debtor] committed an act of fraud that would provide a basis for revocation of discharge under § 727(d)(1) . . . .") (citation omitted).

### A. The Debtor's Statements Regarding His Financial Condition.

The importance of full and accurate disclosure cannot be overstated. "The statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by parties in interest based on fact rather than fiction . . . ." *Saviano v. Tylee (In re Tylee)*, 512 B.R. 409, 416-17 (Bankr. E.D.N.Y. 2014) (citation omitted). The petition, the schedules, the statement of financial affairs and the 2004 exam of the Debtor as well as his tax preparer are so contradictory, this Court has difficulty discerning fact from fiction.

The Debtor's attestation, in his petition, that he was unemployed is false.[12] The testimony taken at the 2004 exam establishes the Debtor was employed at his father's business and had been for several years. When the Trustee inquired about Canape's employment status, the Debtor replied, "I work for my father. Since the Coronavirus he has not been able to get into his office." (ECF No. 110-2, p. 16).

Later, the Trustee once again asked if the Debtor was an employee of his father's business:

Q. So before you went to Florida . . . were you an employee of your father's agency?

A. No.

---

[12] Every bankruptcy petition clearly indicates directly above the debtor's first signature the document has been examined and the debtor declares under the penalty of perjury that the information provided is true and accurate.

> Q. What status did you have?
>
> A. I was nothing.
>
> Q. Well, did you get paid?
>
> A. Not - - I didn't get paid like an employee.
>
> Q. How did you get paid?
>
> A. My father would give my wife money to pay the expenses, like the house mortgage and that stuff, but I was not an employee of my father.
>
> Q. Have you ever been an employee of your father?
>
> A. I would be considered an employee now[13] because he does pay for my, you know, my mortgage and prior to 2016, yes, but he was paying for expenses I had.

(ECF No. 110-2, pp. 36–37).

In a case with similar facts, a debtor's discharge was denied when it was established he understated his income, provided conflicting information regarding employment and failed to disclose certain real property and business interests. *Beer Sheva Realty Corp. v. Pongvitayapanu (In re Pongvitayapanu)*, 487 B.R. 130, 150 (Bankr. E.D.N.Y. 2013). In *Pongvitayapanu*, Judge Grossman details why comprehensive and accurate disclosure is required for a debtor to receive a discharge, stating:

> To ensure complete candor, a debtor is required to sign the petition under the penalty of perjury. That oath "must be regarded as serious business." Debtors who are dishonest or reckless with the truth proceed at their own peril. . . . In addition to utmost honesty, the Bankruptcy Code and applicable rules demand robust disclosure. Debtors must reveal "far more information than would be required to defend a creditor's collection action, or in most other civil litigation."

---

[13] The Debtor does not clarify why he considers himself an employee now, but not previously, as the manner in which he is "paid" did not change. Moreover, the Debtor did not attempt to explain his inaccurate statement on Schedule I that he was unemployed.

9

*Id.* at 138 (internal citations omitted).

Presently, it is unclear whether the Debtor honestly and completely disclosed his entire financial condition. Canape even fails to properly disclose his spouse's bankruptcy filing which occurred only weeks prior to his own.[14] Further, in addition to understating the family income, it also appears Canape increased his expenses by claiming he remitted mortgage payments when, in fact, his father had been paying them.

### B. The Debtor's Failure to List Business Interests, Assets and/or Transfers.

The Debtor also failed to list several businesses in which he had an ownership interest.[15] In response to question 19 of the bankruptcy petition, the Debtor lists himself as 100% owner of Alpha Insurance, LLC and 100% owner of Canape Enterprises, LLC. Yet, when pressed by the Trustee, the Debtor revealed the petition was incorrect. The exchange follows:

> Q. Okay. So, going down almost to the bottom of the page there's a question number 19, and it asks you whether you have non-publicly traded stock . . . including an interest in an LLC, . . . and you checked the box yes. Do you see that?
>
> A. I see that.
>
> Q. And then right at the bottom you say Canape Enterprises, LLC with 100 percent ownership.
>
> A. I stated that, yes.
>
> Q. So, again, sir, I'll ask you, did you ever have an interest in Canape Enterprises, LLC?

---

[14] *See* Facts 5 & 6.

[15] In response to question four (4) of his bankruptcy petition, Canape indicated that the only business name he had used in the previous eight (8) years was Alpha Insurance, LLC.

10

A. No, I didn't.

Q. So, is this wrong?

A. I believe I put Canape Enterprises because I was associated with it.

Q. Did you read the questions before your answered them?

A. I tried to.

Q. Okay.

A. Well, no. I – I believe I did take over 100 percent. When I left for Florida, I took over Canape Enterprises, but it had no - - no value.

Q. Why didn't it have any value?

A. Because there was no business with it.

Q. Where did the business go? We looked at another - -

A. It was transferred over to my father who owned all of it.

…

Q. So, at the time that this was signed on July 15th of 2016, it appears that both you and Vernon were members of Canape Enterprises, LLC.

A. Yes.

Q. Okay. Is this correct?

A. Yes.

Q. But, again, I think we've had some discussion already this morning that you said you didn't have any ownership interest in Canape.

A. I didn't have any ownership. I was a named as a member, but it was not ownership.

…

> Q. Okay. Whatever business Canape Enterprise, LLC had in 2015, 2016, relationships with carriers, relationship with customers, its book of business, all of that went to M.S.C.C. when M.S.C.C. was formed; isn't that right?
>
> A. Yes.
>
> Q. When M.S.C.C. was formed, who were the owners, the owner or owners of M.S.C.C.?
>
> A. I believe I can't answer this really. My father was the 100 percent owner. I believe he also listed my mother. He listed me as a member. He listed -- yeah, I believe that's what he did. I'm not positive.

(ECF No. 110-2, pp. 85–86, 89 & 92).

Canape's statement that he believed himself a member but not an owner of certain business entities is perplexing. Canape's response is suspect because he utilized the business losses of Alpha Insurance, LLC and M.S.C.C., LLC on his personal income taxes. (ECF No. 110-4, pp. 44-46).

A separate exchange between the Trustee and the Debtor regarding a transfer of real property clearly illustrates the inconsistent information given by the Debtor concerning what businesses he owned. When the Trustee asked Canape whether he transferred any real property, the Debtor answered, without qualification, that he did not. However, when the Trustee provided the deed to the property the Debtor then admitted he signed the deed. The exchange follows:

> Q. Do you recall signing a deed on behalf of Canape Insurance Agencies Group with regard to property on Prospect Street in Amsterdam, New York?

>    A.    No, I did not.
>
>    …
>
>    Q.    So you see where the document I'm referencing, it says Quit Claim Deed on top?
>
>    A.    Yes, I do.
>
>    Q.    And there's a signature at the bottom?
>
>    A.    That's my signature, yes, it is.
>
>    . . .
>
>    Q.    From the looks of this deed, there came a time when it was transferred to something called M.S.C.C. LLC. Do you see that at the top?
>
>    A.    Yes.

(ECF No. 110-2, pp. 70-72).

The Debtor's testimony establishes he had an interest in several undisclosed business entities, including Canape Insurance Agencies Group and M.S.C.C., LLC, within the eight (8) years preceding his bankruptcy filing.

### C. The Debtor's Tax Returns.

The testimony of Canape's tax preparer did not assist in clarifying the discrepancies and in some ways made the issues more complicated. A portion of the tax-preparer's 2004 exam proceeded as follows:

>    Q.    I don't have it as part of the exhibit volume, sir, but you had previously produced copies of certain tax returns, and then as part of that there was some handwritten notes about income and expenses and that sort of thing. If you recall, can you tell us where those notes came from? . . .
>
>    A.    Usually that's what Michael [(the Debtor)] gave me at the end of the year.

13

…

Q. Then turning to Exhibit K, sir, which is the Form 1040 tax return for 2016 for Michael Canape and Deborah Canape, is that a document you prepared?

A. Yes.

Q. And on the first page under income on Line 12 it shows a business loss of $43,617?

A. Correct.

Q. And then turning to Schedule C that shows Michael as being the owner of Alpha Insurance Agency, LLC?

A. Yes, as advised by Michael.

…

Q. All right, if we could look at Exhibit M . . . that is a copy of Michael's 2017 tax return Form 1040 we obtained from Michael, and it looks like the Line 12 business loss from Alpha Insurance is substantially higher on this one than it is on the one that your office provided to us. Do you have any explanation for that?

A. I don't recall what the difference is. I don't know.

Q. Do you know which tax return got filed with the IRS?

A. I'm not sure at this point. . . .

. . .

Q. Well, the next question is really the same as the one we've just been wrestling with. Exhibit N appears to be the 2018 tax return for Michael that your office prepared, and then Exhibit O is a copy of that return we

14

> obtained through Michael, but same thing. I mean, it has different figures as far as total income and there's a big loss if you compare the two exhibits.

A. Let's see. I do recall we had to make some adjustments I think to the purchase price of the Alpha Insurance because the loan was recorded incorrectly or something. That may have something to do with it. I know there's a lot of amortization being deducted on the return. I don't recall what the difference is.

…

Q. I mean, but you had previously, according to your testimony, amended tax returns based upon Vernon and Michael telling you that Michael had no ownership interest, but now in March of 2019 he appears to tell you differently, isn't that right?

…

A. I don't recall . . . . I just, you know, didn't really think about Michael owning or not owning, but I went ahead and prepared it the way he gave it to me.

Q. Turning to the next page, sir, that looks to be like I'll call it a spreadsheet but a listing of income and expenses for Alpha Insurance, is that right?

A. Correct.

Q. Where would you have found that information from?

A. Michael would have given that to me.

15

Q. And turning to the next page, sir, that appears to be a ledger sheet that [an employee of the tax preparer] prepared, is that right?

A. Correct.

Q. And it says Alpha Insurance, LLC 2017 on the top and then it appears to list the income and then the expenses for both Alpha and MSCC, LLC, is that right?

A. That's correct.

Q. Then it comes up with a net loss, a net combined loss of the two entities of $103,643, is that right?

A. Correct.

Q. And turning back to Exhibit M if you could do that, that's Michael Canape's 2017 tax return. Do you have that, sir?

A. Yes.

Q. And then going to the first page income, Item Number 12 lists a loss of $103,643 so that would appear to have come from this ledger sheet, this work paper from your office, right?

A. Correct.

Q. But it appears that your office prepared the 2017 tax return for Michael based upon Michael having ownership both in Alpha and MSCC because he's claiming the combined loss on his income tax return that year, isn't that right?

A. Right but I still didn't really quite understand what MSCC, LLC was. I thought it was part of the Florida property or something.

> Q. Right, but regardless of whether you had an understanding of what it was or what it did, Michael represented to you that this was information relevant to his tax returns, right?
>
> A. Correct.

(ECF No. 110-4, pp. 26-27, 35-38, 44-46).

Presently, the tax documents conflict with themselves as well as the testimonies of the Debtor and his tax preparer. Therefore, the tax returns "are not reliable documentary evidence from which Debtor's financial condition can be ascertained." *Suits v. Katsiroumbus (In re Katsiroumbas)*, 589 B.R. 36, 47 (Bankr. N.D.N.Y. 2018). "In a personal bankruptcy case, 'the quintessential documents that must be preserved and kept are debtor's income tax returns.'" *Scheidelman v. Henderson (In re Henderson)*, 423 B.R. 598, 617 (Bankr. N.D.N.Y. 2010) (citation omitted).

The Debtor has offered several different versions of his tax returns, some amended in certain ways and others not amended at all. Nevertheless, neither the Debtor nor his tax preparer adequately explain the multiple contradictions contained in Canape's tax returns. Moreover, the Debtor did not clarify the irregularities in his petition, schedules and statement of financial affairs. This Court previously denied a discharge after determining a debtor failed to be completely forthright in his petition, finding:

> Much of the information regarding the Debtors' financial superstructure, such as income, expenses and transactional history is unequivocally wrong. It is not complicated: How much do you earn? Is your salary going to increase or decrease? What are your expenses? What income have you taken in during the last six months? Where have you lived? Have you been sued? Have you paid relatives? Are you owed support? What are your assets? These everyday issues are crucial for the honest administration of the bankruptcy system.

*Ross v. Wolpe (In re Wolpe)*, No. 09-90130, 2013 Bankr. LEXIS 1618, at *30-31 (Bankr. N.D.N.Y. Apr. 18, 2013).

This Court finds Samp has provided sufficient evidence to form a basis for revocation under § 727(d)(1), which fulfils the initial requirement of the Rule 4004(b)(2) test.

### 2. Was the Creditor Aware of the Underlying Facts?

Having established a basis for revocation pursuant to § 727(d)(1), Rule 4004 next requires that the movant have no knowledge of those facts in time to permit an objection. Fed. R. Bankr. P. 4004(b)(2). The Creditor contends he was not aware of the pertinent issues until after the 2004 exams were held, which was after the date to object to Canape's discharge had passed. A review of the transcript clearly indicates the Debtor's testimony at the 2004 exam directly contradicts statements made in his petition. Moreover, the testimony is replete with inconsistencies. Additionally, Canape's tax preparer was unable to clarify any of the questions raised by the tax returns. Since these ambiguities were not uncovered until after the time to object to the Debtor's discharge had expired, Samp meets the second prong of the Rule 4004(b)(2) test.

### 3. Was the Motion to Extend Made Promptly After the Facts Were Discovered?

Finally, Rule 4004 requires the motion to be filed promptly after the movant discovers the facts forming the basis to extend time. Fed. R. Bankr. P. 4004(b)(2). According to Samp, the transcript of the Debtor's testimony was received on February 23, 2021. (ECF No. 110). Likewise, the transcript of the tax preparer's testimony was not obtained until March 1, 2021. *Id.* The Creditor's motion was filed on March 17, 2021. *Id.* This Court finds that Samp acted promptly in filing the Motion to Extend and thus, meets the third and final prong of Rule 4004(b)(2)'s test.

For all these reasons the Court finds Samp has met his burden to, at the very least, extend the time to file an objection to the Debtor's discharge. It is beyond dispute, if proven, the failure

to list assets or to understate income and overstate expenses could lead to the denial of a discharge pursuant to § 727(a)(4). "It is well established that a deliberate omission may constitute a false oath, and thus result in a denial of the discharge." *In re Tylee*, 512 B.R. at 416 (citation omitted). Moreover, "[t]he plain language of this statute provides that one single false oath or account is sufficient to deny a debtor's discharge." *Id*. As this Court has previously held, "For the court to give countenance to the informational graveyard before it, would be to invite wholesale chaos on the system and its participants." *In re Wolpe*, 2013 Bankr. LEXIS 1618, at *33.

## CONCLUSION

While the Court is troubled by the Debtor's veracity, Canape has not had an opportunity to respond to the Creditor's allegations. Samp's papers implicate § 727(a)(4); two (2) requirements of this subsection are that the suspect statements (or omissions) "must be real and substantial" and be made with "fraudulent intent." *Cadles of Grassy Meadows II, L.L.C. v. St. Clair (In re St. Clair)*, 533 B.R. 31, 41 (Bankr. E.D.N.Y. 2015). While fraudulent intent may be determined by looking to certain "badges of fraud," *Salomon v. Kaiser (In re Kaiser),* 722 F.2d 1574, 1582 (2d. Cir. 1983), the Debtor is entitled to respond to the claims. There may be sound and reasonable explanations for the issues raised by the Creditor.

This Court finds the resolution reached by Judge Glenn in *Bressler* to be pragmatic and adopts the same. In *Bressler*, Judge Glenn extended the time to object to the debtor's discharge but cautioned:

> [T]he Court does not conclude that the facts alleged by [the creditor] are true or that [the debtor] will be denied a discharge as a result. Those facts will bear out in discovery and at trial, if necessary. Rather, the Court today simply concludes that [a basis] exists to extend the deadline for [the creditor] to file an objection to discharge complaint, based on newly discovered facts.

*In re Bressler,* 601 B.R. at 333.

Since the Debtor's intent is squarely at issue, this Court will extend the time for the Creditor to file the adversary complaint to April 12, 2022, pursuant to Rule 4004(b)(2). The Debtor will then have the opportunity to respond and an evidentiary hearing will be scheduled, if warranted.

SO ORDERED.

Dated: March 22, 2022
Albany, New York                              /s/ Robert E. Littlefield, Jr.
                                              Hon. Robert E. Littlefield, Jr.
                                              United States Bankruptcy Judge